**D–1 ENTERPRISES, INC., et al., Plaintiffs–Appellants,**

v.

**COMMERCIAL STATE BANK, Defendant–Appellee.**

No. 87–2699.

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1989.

---

John J. Durkay, James L. Weber, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for plaintiffs-appellants.

Howard L. Close, Gary Neale, Reger, Scott Dollinger, Orgain, Bell & Tucker, Beaumont, Tex., for defendant-appellee.

## ON PETITION FOR REHEARING

Before BROWN, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

In response to the petition for rehearing, we withdraw our opinion of August 18, 1988, and substitute the following. The issue in this debtor's bankruptcy appeal is whether an agreed order lifting a stay and abandoning certain assets of the debtor to a creditor, entered in a "contested proceeding," is res judicata of various tort claims against that creditor for bad faith acceleration of a note, wrongful foreclosure and the like and, if not, whether these were compulsory counterclaims to the creditor's motion to lift the stay. Concluding that neither is the case, we reverse.

### Facts and Prior Proceedings

Plaintiffs-appellants, related corporations in the security equipment business, owed Commercial State Bank almost one million dollars when Commercial decided to call the loans and foreclose on the collateral. D–1 filed Chapter 11 proceedings to stave off Commercial. After about six months—several minor bankruptcy orders and one aborted attempt to sell all the assets of D–1 to a third party having ensued—the bankruptcy court accepted an agreed order lifting the stay and "abandoning" most of D–1's assets to Commercial. A few months later, D–1 received permission from the bankruptcy court to hire outside counsel to pursue potential lender-liability claims against Commercial. Later still, D–1 filed this adversary proceeding within the continuing bankruptcy case. Because of an overcrowded bankruptcy docket, the parties petitioned the district court to withdraw the reference and to try the case

itself. The district court did so, then ruled in response to Commercial's motion to dismiss that the D–1 claims were barred by *"res judicata"* because they should have been raised earlier in the course of the bankruptcy. D–1 appeals.

### Are the Debtor's Claims Barred?
### Southmark Properties:

The creditor relies principally upon our decision in *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984) (Garwood, J.). In that case, a Chapter X debtor had agreed to a sale of mortgaged property at a reorganization trustee's sale and to allow its main creditor to bid the amount of its debt. The creditor's state court foreclosure suit had previously been enjoined in the Chapter X proceedings. The creditor agreed to dismiss various pending state court actions against the debtor and to abandon its challenge to the Chapter X proceedings. The sale was a public cash auction open to any interested buyer and the district court's order of sale provided that the property "shall be sold free and clear of all ... claims" and that the creditor be allowed to bid the amount of its debt. At the sale, the creditor did so, and thus acquired the property. Shortly thereafter the district court entered an order confirming the sale. Because the property was the debtor's only asset, the reorganization petition was *later* dismissed on motion of the trustee. "No appeals were taken from the order directing the sale, or that confirming it, or the 1978 order dismissing the reorganization." *Southmark Properties*, 742 F.2d at 867.

More than three years later, the former debtor and its principals brought suit in state court against the former creditor alleging that the former creditor had violated various provisions of the loan agreement, had engaged in fraudulent and extortionate behavior, and had breached its duty under Louisiana law to perform the contract "in good faith." The former creditor filed a suit in federal court seeking declaratory and injunctive relief from the state court action. The district court granted the injunction and the former debtor appealed.

On appeal, our panel first held that the federal court had ancillary jurisdiction over the case to "protect or effectuate" the earlier judgment of the bankruptcy court. *See* 28 U.S.C. § 2283 (Anti–Injunction Act). The Court went on to consider the merits of the *res judicata* claim, holding that the suit was barred because the former debtor had had a full and fair opportunity to litigate the lender-liability claims in the bankruptcy proceeding. The district court's injunction was affirmed.

■ Essential to the application of the doctrine of *res judicata* is the principle that the previously unlitigated claim to be precluded could and should have been brought in the earlier litigation. *Southmark Properties*, 742 F.2d at 871. The law as it existed under former Chapter X would have allowed the debtor's claim against the creditor, even on a largely unrelated matter, to have been asserted as an affirmative defense to the creditor's efforts to foreclose. The Bankruptcy Reform Act of 1978 (the "Bankruptcy Code"), however, provides an expedited procedure for obtaining relief from the automatic stay of § 362(a) of the Bankruptcy Code. Section 362(e) of the Bankruptcy Code requires a preliminary hearing within 30 days after a request for relief from the stay is filed and the commencement of a final hearing not later than 30 days after the conclusion of such preliminary hearing. Further, Bankruptcy Rule 4001 provides for a termination of the stay 30 days after the final hearing is commenced unless the court earlier orders the stay continued pending a conclusion of the final hearing. Bankr.R. 4001(a)(2).

■ The legislative history of § 362(e) makes clear that counterclaims against a creditor seeking to lift the stay on largely unrelated matters are not to be handled in the summary fashion required by the expedited nature of the proceeding. House Report No. 95–595, 95th Cong., 1st Sess. 344 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *accord, Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In*

re *Little Creek Dev. Co.),* 779 F.2d 1068, 1074 (5th Cir.1986). Instead, they will be the subject of more complete proceedings to recover property of the estate or to object to the allowance of a claim. Consistent with the legislative history, the courts have held that "indirect defenses," such as breach of contract, fraud and the like, would be severed from the expedited stay litigation if raised in an effort to defeat the creditor's motion. *Little Creek,* 779 F.2d at 1074. *See* M. Bienenstock, *Bankruptcy Reorganization* 140–49 (1987), and cases cited therein. The lender liability claims asserted in the adversary proceeding at issue in this case were not, under the foregoing analysis, "direct defenses" that the debtor could or should have litigated in response to the creditor's motion for relief from the stay. *Little Creek,* 779 F.2d at 1074. Hence, they are not among the claims that would be precluded by the application of· *res judicata. Southmark Properties,* 742 F.2d at 871; *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir. 1987).

The fact, stressed by Commercial, that we are here dealing with agreed orders does not change the outcome. The orders themselves make no reference to the claims which the debtor now seeks to assert and do not evidence any effort to resolve all issues between the debtor and Commercial.

In *Southmark,* the sale was a court-ordered public cash auction, and the orders of sale and of confirmation, by allowing the secured creditor to bid in the full amount of its claimed debt, necessarily determined not only that the amount so bid was actually owing, but also that the maturity of the debt had been validly accelerated. These determinations were both inconsistent with the crux of the debtor's later action. 742 F.2d at 869. And insofar as the later action claimed that the creditor "improperly assumed ownership of ... [the property] by way of the [reorganization] trustee's sale," it was likewise inconsistent with the sale and confirmation orders. Id. Here, the context is quite different. The abandonment order, which does not contemplate a public cash auction, does not necessarily determine the precise amount of the debt or that it was validly accelerated, and the subsequent adversary proceeding does not in substance challenge the creditor's acquisition of title.

*Compulsory Counterclaims in Bankruptcy*

■ Our analysis is supported by considering the provisions of the Bankruptcy Rules dealing with counterclaims in the context of stay litigation. Bankruptcy is a unique form of litigation in that each case comprises a series of more or less self-contained episodes that resolve particular disputes at particular times. There are two basic forms of adversary process within a bankruptcy case: "contested matters" and "adversary proceedings." Counterclaims are compulsory only in "adversary proceedings," but not in the quick motion-and-hearing style "contested matters." We conclude that not one of the three orders entered by the bankruptcy court in this case required that any counterclaims be asserted. Two of the orders were sought by the debtor D–1, and it would be unimaginable to require the debtor to raise such issues in the motions involved here. The only arguable order is the order lifting the stay, the key to the case.

Appellee Commercial quite properly finds little to dispute in the above propositions, including the view that ordinarily no counterclaims need be asserted against a motion to lift the stay; but it maintains that on the "unique facts" debtor's "abandonment" of its property to Commercial under 11 U.S.C. § 554 was a final adjudication on the merits, so that the doctrine of *res judicata* comes into play.

We cannot agree. It would be odd indeed if a claim that was not required as a compulsory counterclaim by the Bankruptcy Rules and in fact could not be litigated as a defense to the motion for relief from the stay was nonetheless barred by *res judicata* within the same case. Many of the statutes and rules allow more leeway for the debtor-in-possession or trustee in a bankruptcy proceeding to be excused from failure to develop the case as rapidly as possible in order to promote the basic poli-

cy of marshalling all the assets for the benefit of creditors. For example, even the compulsory counterclaim rules found in Bankruptcy Rule 7013 include a liberal "escape clause":

> A trustee or debtor-in-possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding in a separate action.

Bankruptcy Rule 7013. If the "compulsory" counterclaim rule is this generous to the trustee or debtor, it would be odd indeed for us to hold that the debtor must assert all related claims in a "contested matter" such as a motion to lift the stay, to which the compulsory counterclaim rules do not even apply. That would lay a heavier burden on the debtor to respond with related claims in some unspecified "contested matters" than in "adversary proceedings," an exact inversion of the apparent wishes of Congress.

The only case on point (although decided under the prior Rules) is *In re: Torco Equipment Co.*, 65 B.R. 353 (W.D.Ky. 1986), *aff'g and rev'g*, 39 B.R. 216 (Bankr. W.D.Ky.1984). The debtor in that case brought an adversary action seeking to set aside an allegedly preferential transfer against a creditor. More than two years earlier and not long after the bankruptcy was filed, the same creditor had succeeded in having the stay lifted and had foreclosed upon certain collateral. The bankruptcy court held that *res judicata* did not bar the preference action, but that the compulsory counterclaim rules did, and that it would not grant leave to amend since the debtor's lawyer had made complaints about the preference problem years before but done nothing about it until then. On appeal, the district court agreed as to *res judicata* but reversed on the counterclaim issue. The court held that the debtor was not required to bring its preference claims in response to the motion to lift the stay and that the preference claims could be independently pursued even two years later.

*Conclusion*

Thus we conclude that, as a general rule, neither the notion of *res judicata* nor that of compulsory counterclaim has application to those contested matters where the claim sought to be barred could not effectively have been litigated. Only such matters were presented here.

REVERSED AND REMANDED.